UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL FILE NO.: 10-cv-3086 JNE/FLN

| | |
|---|---|
| Christina Zortman,<br><br>                 Plaintiff,<br>v.<br><br>J.C. Christensen & Associates, Inc.,<br><br>                 Defendant. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

This case presents a statutory interpretation question in the eye of a policy storm. In the name of transparency, the Fair Debt Collection Practices Act ("FDCPA") requires debt collectors to disclose their purpose when communicating with consumers.[1] In the name of consumer privacy, the FDCPA prohibits debt collectors from disclosing their purpose when communicating with third parties. Communicating via a voice message that may reach a consumer—but may reach a third party—creates a problem.

Defendant J.C. Christensen & Associates, Inc. ("JCC") left voice messages identifying itself as a debt collector that were received by Plaintiff's children. When Plaintiff's children confronted her about the messages, she was ashamed. She filed this lawsuit to obtain relief under the FDCPA. JCC now moves for summary judgment. First, JCC argues that its disclosure did not violate the FDCPA. Second, JCC argues that

---

[1] A "consumer" under the FDCPA is a natural person who owes or allegedly owes a debt. 15 U.S.C. § 1692a(3).

1

if it did violate the FDCPA it is still entitled to summary judgment because it has offered Plaintiff the full amount of her compensable damages, rendering the case moot.

While JCC's argument as to its non-liability relies on dictum from an earlier decision of this Court, the result would be difficult to square with the statutory language and would create a direct conflict among courts in the U.S. District Court for the District of Minnesota. This Court should hold that the JCC's messages violated the FDCPA.

JCC's argument as to Plaintiff's damages is also flawed. Plaintiff's deposition testimony creates a jury question as to whether she suffered compensable emotional distress damages as a result of her children receiving JCC's messages. Further, JCC's purported offer of full compensation was deficient and cannot render her claims moot because it cut off her claim to attorney's fees at the date of the offer.

As developed more fully below, Plaintiff respectfully requests that JCC's motion be denied.

## **FACTUAL BACKGROUND**

In February, March, and April of 2010, Plaintiff and her children R.J. and D.K. shared a cellular telephone number ending in 5634. (*See* Declaration of Thomas J. Lyons ("Lyons Decl.") ¶2, Ex. 2, Deposition of Christina Zortman ("Zortman Depo.") at 9:16; 10:13–25; 13:11–12.) R.J. was eight at the time and would take the phone to friends' houses or the park or hockey practice so he could stay in contact his mother and vice versa. (*See* Affidavit of Jessica Schulte Williams ("Williams Aff.") (ECF Doc. No. 51-2), Ex. C, Deposition of R.J. ("R.J. Depo.") at 5:4–14.) D.K. was a freshman in high school and would take it "wherever [he] went." (*See* Williams Aff., Ex. D, Deposition of

2

D.K. ("D.K. Depo.") at 7:10–13.)  Basically, "[w]hoever needed it used it." (Zortman Depo. at 13:11–12.)  The outgoing message did not identify Plaintiff and only identified the telephone number.  (Zortman Depo. at 9:1–10.)

On February 4, 2010, JCC began attempting to collect a consumer debt allegedly owed by Plaintiff related to a Kohl's credit card.  (*See* Lyons Decl. ¶ 4, Ex. 3, Deposition of Chad Lemke ("Lemke Depo."), Ex. 3.)  JCC first sent Plaintiff a letter and then began calling two contact numbers provided by its client.  (*Id.*, Exs. 3–4.)  One number, ending in 6577, was Plaintiff's family's home telephone number.  (*Id.*)  The other was the family's cell phone ending in 5634.  (*See id.*; Zortman Depo. at 9:16.)  JCC's client listed the family's 5634 number as Plaintiff's "POE" number.  (Lemke Depo., Ex. 3.)  JCC's representative testified that this means the client believed the number was Plaintiff's "business" number.  (*Id.* at 59:13–20.)  Throughout its collection attempts, JCC treated the 5634 number as the number for Plaintiff's "place of employment."  (*Id.*, Ex. 4)

In February through April of 2010, JCC left multiple voice messages for Plaintiff at each number.  (*See* Zortman Depo. 14:14–15:13; 60:7–14; Lemke Depo., Ex. 4)  The content of the messages has been accurately represented by JCC.  (*See* Memorandum in Support of Motion for Summary Judgment ("Def.'s Memo.") (ECF No. 50) at 3.) Critically, the messages disclosed that JCC is a debt collector and that it had an important message.

R.J. and D.K. both heard JCC's messages when in possession of the family's phone.  R.J. first heard the message while out playing with friends.  (R.J. Depo. at 7:13–18.)  When he got home, he confronted his mother about the "debt collector" and asked

3

what it meant. (*Id.*) D.K. first heard the message while visiting a friend's house. (D.K. Depo. at 9:3–15.) He confronted his mother the next day. (*Id.* at 19–23.) Plaintiff was ashamed and decided she had to talk to all of her children—including D.R.K., who was seventeen at the time, and C.Z, who was not yet in school—to attempt to explain the family's financial problems. (*See* Zortman Depo. 21:13–22:11; D.K. Depo. at 10:1–11:24.) She admitted that the family did not have the money to pay its debts. (*Id.*) Afterward, she was ashamed, had difficulty sleeping, and worried what her children thought of her. (*See* Zortman Depo. 58:1–13; 61:14–19.)

Plaintiff filed this lawsuit on July 22, 2010 in order obtain relief under the FDCPA for being forced to involve her minor children in the family's financial problems as a result of JCC's communications with R.J. and D.K. in connection with her alleged debt. (ECF Doc. No. 1.) On November 24, 2010, JCC moved for judgment on the pleadings asserting that it cannot be liable for improper third party communications under the FDCPA without purposeful intent. (ECF Doc. Nos. 8, 10.) This Court rejected JCC's argument and denied its motion. (ECF Doc. No. 20.) On May 3, 2011, JCC served Plaintiff with a Federal Rule of Civil Procedure 68 offer of judgment offering $1001 plus costs and attorney's fees up to the date of the offer in total satisfaction of all claims. (Williams Aff., Ex. F.) Plaintiff rejected the offer. (See Lyons Decl. ¶ 5.)

On November 1, 2011, JCC filed the present motion for summary judgment arguing that it did not violate the FDCPA and that Plaintiff has no compensable damages beyond those pledged in JCC's Rule 68 offer.

**LEGAL STANDARD**

Summary judgment is only appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir.2004).  A fact is material for purposes of summary judgment if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**ARGUMENT**

I.  THE FDCPA, VOICE MAIL, AND THE NEED FOR PREDICTABILITY

   A. The FDCPA Generally

In enacting the FDCPA, Congress found abundant evidence that abusive and unfair debt collection practices harm consumers.  15 U.S.C. § 1692(a).  In particular, Congress found that abusive and unfair debt collection practices contribute to familial (marital) instability and invasions of individual privacy. *Id.*  Congress expressly balanced these concerns against debt collectors' need to do their jobs, enacting the FDCPA only upon finding that "[m]eans other than . . . abusive debt collection practices are available for the effective collection of debts."  15 U.S.C. § 1692(c).

The FDCPA is a broad remedial statute intended to be liberally applied in favor of consumers*.  See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162,

1171–72 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). It imposes strict liability, with a sole exception for violations that occur despite procedures reasonably adapted to avoid error. 15 U.S.C. § 1692k(a),(c); *Picht v. John R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001).

### B. Voice Messages and the Policy Storm

The conflict regarding the content of debt collectors' voice messages involves policies of transparency, privacy, and the need for debt collectors to be able to do their jobs. The value of transparency is embraced in a line of cases starting with *Foti v. NCO Financial Systems, Inc.* and including *Mark v. J.C. Christensen & Associates, Inc.* in the District of Minnesota. *See Foti*, 424 F.Supp.2d 643, 654-55 (S.D.N.Y.2006); *Mark*, No. 09-cv-100, 2009 WL 2407700, at *2 (D.Minn. Aug. 4, 2009). These courts have held that a debt collector may not communicate with a consumer by voice message without disclosing its identity. *E.g.*, *Mark*, 2009 WL 2407700, at *3–4. If a debt collector wants a consumer to call back, it must let the consumer know the purpose of the call.

The privacy value, expressly articulated in Congress' findings and in its prohibition against third-party communications, helps define the limits of the transparency value. *See* 15 U.S.C. §§ 1692(a) and 1692c(b). If a debt collector does not know if a voice message will reach the consumer or a third party, the only way to give effect to both the transparency value and the privacy value is to prohibit that communication. This view was recently embraced in the District of Minnesota in *Cordes v. Frederick J. Hanna & Associates, P.C.* and is advocated by Plaintiff here. *See* 789 F.Supp.2d 1173 (D.Minn. 2011).

The debt collection industry has rallied intense opposition to this straightforward conclusion. In a June 12, 2011 *New York Times* article on challenges facing the industry, Mark Neeb, President of ACA International ("ACA"), a trade association, lamented that "[w]e can't help consumers with their financial problems if we can't get ahold of them." (*See* Lyons Decl. ¶ 6, Ex. 4.) The debt collection industry's view is that they cannot do their jobs if courts give both the transparency value and the privacy value their full effect. Accordingly, the industry advocates limiting the privacy value in order to allow voice message communications that risk improper third party disclosures.

**C. The Need for Predictability**

While the debt collection industry views the risk of third party disclosure as a necessary part of doing business, the consensus is that the current state of the law is not favorable. In its 2011 legislative policy blueprint, ACA states that "[t]he FDCPA should be amended to specify the precise language that a collector can leave in a voice mail message without violating the law." (*See* Lyons Decl. ¶ 6, Ex. 5.) In a recent article in insideARM, a collection industry trade publication, the author concluded that "[u]ntil Congress provides an amendment to the FDCPA clarifying the issue of phone message, or unless the Supreme Court takes up the issue, uncertainty will continue with respect to debt collector phone messages." (*See* Lyons Decl. ¶ 7, Ex. 6.) Thus, while the industry supports broad latitude for debt collectors when communicating by voice message, the most critical policy concern with respect to voice messages is predictability.

## II. JCC'S VOICE MESSAGES WERE "COMMUNICATIONS" FOR THE PURPOSES OF SECTION 1692c(b).

JCC's first argument is that its voice messages did not violate section 1692c(b) of the FDCPA. Section 1692c(b) states that, unless a communication is intended only to acquire location information, or the consumer has consented to the communication, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." A communication is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

Courts have consistently held that voice messages are communications under the FDCPA. *See, e.g.*, *Foti,* 424 F.Supp.2d at 654–55; *Mark*, 2009 WL 2407700, at *3. Accordingly, by communicating with Plaintiff's children via voice message in connection with the collection of a debt allegedly owed by Plaintiff, JCC violated 15 U.S.C. § 1692c(b).

JCC attempts to avoid this conclusion by pointing to dictum in this Court's earlier decision denying JCC's motion for judgment on the pleadings. (ECF Doc. No. 20.) The Court stated that "[t]his complaint does not plead a case where a message that contained only the disclosure requirements of §§ 1692d(6) and 1692e(11) is what caused the alleged violation of § 1692c(b)." (*Id.*) Thus, because it is the § 1692d(6) disclosure of its

8

identity as a "debt collector" that Plaintiff alleges violated § 1692c(b), JCC asserts that it is entitled to summary judgment in its favor. (*See* Def.'s Memo. at 9)

The issue addressed by the Court's dictum, whether stating that a message is from a "debt collector" violates § 1692c(b) when the message is received by a third party, was not briefed in connection with JCC's motion for judgment on the pleadings. Plaintiff now takes the opportunity to present authorities showing that it does.

First, the statutory violation requires only that a debt collector "communicate" with a third party in connection with the collection of a debt. 15 U.S.C. § 1692c(b). As noted above, a communication is "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2). Here, JCC stated that it had an important message and that it was a debt collector. (Def.'s Memo. at 3.) From this message, JCC conveyed two facts to Plaintiff's children: there was an important message, and the important message was from a debt collector. Consistent with the FDCPA's broad remedial purpose, conveying that a call is an important message from a debt collector should be viewed as conveying information regarding a debt. Further, there can be little doubt that the communication was "in connection with the collection of any debt." JCC asked for a call back regarding its important message, and there is no indication that JCC planned to discuss anything other than collecting the alleged debt. (Def.'s Memo at 3.)

Second, the Court's dictum cannot be squared with *Foti* and *Mark*. Those cases interpreted the exact same language at issue here, the FDCPA's definition of "communication." In *Foti*, the voice message stated that the call "regard[ed] a personal

9

business matter that requires your immediate attention." The court held that this message was a "communication" under the FDCPA and specifically observed that the message "conveyed information to plaintiff, including the fact that there was in important matter that she should intend to." *Foti,* 424 F.Supp.2d at 655. The definition of "communication" should be applied in the same manner here. Applying additional elements would require reading additional elements into the FDCPA; such a reading would drive this remedial statute in reverse.

Third, the FDCPA's section governing permissible communications with third parties supports Plaintiff's conclusion. Under § 1692b, a debt collector may communicate with third parties to acquire location information. In doing so, a debt collector may not use any language or symbol that "indicates that the debt collector is in the debt collection business." 15 U.S.C. § 1692b(5). This demonstrates that Congress viewed the mere fact of debt collection as private, protected information in the context of communications with third parties. Accordingly, JCC conveying that it was a "debt collector" to Plaintiff's children should be viewed as the "conveying of information regarding a debt" and a violation of § 1692c(b).

Finally, and perhaps most persuasive, Judge Richard H. Kyle's court in the District of Minnesota recently held in *Cordes* that a voice message conveying identical information to JCC's message violated § 1692c(b). Specifically, the court found that the debt collector left seven voice messages for the plaintiff "identifying itself as a debt collector." 789 F.Supp.2d at 1174 ("[Defendant] left seven messages for [plaintiff] on her home voicemail, identifying itself as a debt collector; some were heard by [third

10

parties]."). Based on this finding, the court held that the debt collector improperly "communicated" with third parties when the plaintiff's roommates heard the messages. *Id.* at 1175–77. Against the backdrop of uncertainty with respect to how the FDCPA applies to voice messages, Judge Kyle's decision in *Cordes* provides a powerful reason to adopt the conclusion presented by Plaintiff.

### III. SECTION 1692c(b) DOES NOT INCLUDE A STATE OF MIND REQUIREMENT.

JCC also argues that it did not violate section 1692c(b) because it did not have reason to know that its messages might be heard by Plaintiff's children. (*See* Def.'s Memo at. 10.) Acknowledging that the FDCPA is a strict liability statute, JCC nonetheless argues that common sense must allow JCC the right to leave voice messages until it is put on notice that the messages create a risk of third party disclosures. (*Id.*)

JCC's proposed rule, strict liability plus common sense, is not strict liability. It is negligence or perhaps even recklessness. Such a rule is impermissible for myriad reasons. Most plainly, the FDPCA <u>is</u> strict liability. *See Picht*, 236 F.3d at 451. When a particular state of mind is required to establish a violation, the statute expressly says so. *See* 15 U.S.C. § 1692d(5) (sanctioning repeated phone calls only when there is "intent to annoy or harass). Section 1692c(b) does not contain a state of mind requirement. Therefore, JCC violated section 1692c(b) regardless of whether it had reason to know that the messages risked third party disclosure.[2]

---

[2] Further, even if there was a state of mind requirement, all discovery obtained from JCC suggests that JCC believed Plaintiff's family's phone number was a business number. (Lemke Depo. at 59:13–20.) The outgoing message did not identify Plaintiff. (Zortman

11

JCC's proposed rule is an invitation to use policy to write a state of mind exception into section 1692c(b). Because it views the FDCPA's policies of transparency and privacy as unduly restrictive when they operate in tandem, JCC asks the court to relax the FDCPA's privacy protections. Beyond the fact the JCC's proposal runs counter to the purpose of remedial statutes in general, the policy is not persuasive. *See also Mark*, 2009 WL 2407700, at *8, n.6 ("JCC's argument that the FDCPA effectively eliminates telephones as a means of communication for debt collectors is not persuasive.").

First, Congress expressly balanced the FDCPA's burden on debt collectors and found that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c). In light of this finding, it takes more than a broad appeal to debt collectors' need to do their jobs to alter the conclusion required by the plain language of the statute—that JCC violated the FDCPA. JCC has presented no evidence that restricting voice messages in circumstances identical to this one would result in a measurable decrease in debt collector effectiveness. Only with this evidence before it could a court properly weigh the burden on debt collectors against the consumer privacy interest embodied in section 1692c(b).

Further, the FDCPA contains a statutory defense that relieves debt collectors from liability for violations that occur despite the maintenances of procedures reasonably

---

Depo. at 9:1–10.) Based on these facts, JCC cannot assert that it did not have a reason to know that a third party might receive the voice messages.

adapted to avoid error, commonly known as the bona fide error defense.[3] 15 U.S.C. § 1692k(c). This defense reduces any potential burden on debt collectors by allowing them to leave messages where they have a policy in place to only leave voice messages that do not risk third party disclosure. For example, a consumer's outgoing message might state, "Hello, you've reached [name of consumer], please leave me a message." Additionally, a debt collector may speak to a consumer in a live conversation and obtain permission to leave messages at a particular number. A debt collector could take further precautions by asking unintended third parties to hang up and by instructing consumers to listen to messages in private. If JCC had a policy to leave messages only as described above, it could still leave messages in appropriate circumstances without exposing itself to liability.

### IV.  JCC IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S ACTUAL DAMAGES CLAIM.

In the alternative, even if it violated section 1692c(b), JCC contends that Plaintiff suffered no compensable emotional distress a result of the voice messages. (Def.'s Memo. at 11.) Accordingly, JCC asserts that is prior offer of judgment pursuant to Rule 68, which offered Plaintiff the maximum statutory damages under the FDCPA, moots this case. (*See* Williams Aff., Ex. F.)

---

[3] In this case, JCC does not assert the bona fide error defense, presumably because it did not maintain such procedures reasonably adapted to avoid third party communications. Indeed, it appears JCC's policy is to leave messages identifying itself as a debt collector at all numbers provided by its clients without regard to what the outgoing message might say or providing a third party the opportunity to hang up. (*See* Lyons Decl. ¶ 2, Ex. 1) (filed under seal pursuant to protective order (ECF Doc. No. 47)). Also, JCC was apparently leaving messages at a number it thought was Plaintiff's business number. (*See* Lemke Depo. at 59:13–20.)

### A. Causation

JCC's first argument with respect to Plaintiff's damages is that her emotional distress was caused by other factors, including the bare fact that Plaintiff was in debt and the fact that she received calls from other debt collectors. (Def.'s Memo. at 18.) While Plaintiff did testify that multiple factors were causing stress in her life around the time of JCC's voice messages, she also established a clear causal connection between JCC's messages and particular moments of mental anguish. (Zortman Depo. at 58:22–59:5; 65:6–16.)

JCC directly presented its theory of the case to Plaintiff during her deposition. Counsel for JCC asked, [I]s it fair to say . . . the worry stems not only from the calls you received from [JCC], but also from your general financial situation?" (Zortman Depo. at 58:22–59:1.) Plaintiff did not equivocate that, at particular moments, JCC's voice messages were the sole cause of her anguish. (*Id.* at 59:2–5.) She responded, "Depending on what times. If it was after the discussions that I had with the boys, then it was J.C. Christensen. If it was a discussion I had with [her oldest son] regarding [another financial issue], then . . . ." (*Id.*) In Plaintiff's mind, JCC's voice messages caused discrete moments of frustration.[4] JCC's allusion to other stressors operating in Plaintiff's life over the same time span is insufficient to break this causal connection.

---

[4] Plaintiff does not rely solely on her own subjective view that the voice messages caused her humiliation and frustration. There is also a strong basis in objective fact. Before Plaintiff's children heard JCC's voice messages, they never asked about the family's debt problems and Plaintiff never discussed those issues with them. (Zortman Depo. at 65:6–16.)

JCC also presents possible mitigating factors, such as Plaintiff's choice to have a family cell phone and her choice to have a full and frank discussion of the family's debt problems with her children after JCC's voice messages. (Def.'s Memo. at 18–19.) While these decisions may or may not influence a jury as to the quantum of damages Plaintiff is entitled to, they cannot support judgment as a matter of law in JCC's favor on the issue of causation. Even as mitigating factors, JCC's arguments are unlikely to sway a jury that Plaintiff should have done more to reduce her damages. Plaintiff used a shared family phone so she could keep track of her children and save money. After JCC's voice messages, she did instruct her children not to listen to messages. (Zortman Depo. at 24:14–22.) Also, her judgment in giving her eight year old son a truthful answer to his question regarding JCC's purpose is beyond reproach. Arguably, the guilt of lying to him and saying it was not important, as JCC suggests she could have done, would have caused equal distress. (Def.'s Memo. at 18–19.) Plaintiff's choices after JCC exposed her debt problems to her children are not for JCC to decide and do not make her anguish and less the "result of" JCC's violations.

### B. Sufficiency of the Evidence

JCC's second argument with respect to Plaintiff's damages is that she has insufficient evidence of compensable harm. (Def.'s Memo. at 14–17.) Accordingly, because JCC offered full compensation for her other claims for relief, including statutory damages and attorney's fees, JCC argues that the case should be dismissed as moot. (*Id.* at 20–21.)

Courts in the District of Minnesota have consistently held that mental anguish is a compensable harm in federal consumer protection statutes. The question, as framed by Judge John R. Tunheim in *Meyer v. F.I.A. Card Services, N.A.*, is what evidence of mental anguish is necessary to create a jury question. 780 F.Supp.2d 879, 884 (D.Minn. 2011). Judge Tunheim identified three different standards. The highest standard, as reflected in *McKinley v. CSC Credit Services, Inc.*, tracks state law and requires physical evidence of emotional distress. *Id.* at 884 (discussing *McKinley*, No. 05-cv-2340, 2007 WL 1412555 (D.Minn., May 10, 2007)). A middle ground, as reflected in *Zean v. Unifund CCR Partners*, accepts that a plaintiff's testimony is sufficient evidence but requires a detailed account of the circumstances of the mental anguish. *Id.* at 885 (discussing *Zean*, No. 08-cv-1091, 2009 WL 2461723 (D.Minn., Aug. 10, 2010)). Finally, the most lenient standard, as reflected in *Edeh v. Midland Credit Management, Inc.*, embraces the highly subjective nature of mental anguish and is more deferential than *Zean* to a plaintiff's own testimony. *Id.* (discussing Edeh, 748 F.Supp.2d 1030 (D.Minn. 2010)). Ultimately, Judge Tunheim applied the *Edeh* standard and held that the plaintiff's testimony regarding her frustration and humiliation in dealing with incorrect credit reporting issues created a genuine issue of material fact as to whether she suffered compensable harm. *Id.*

*Edeh* and *Meyer* are both reported decisions and were decided after *McKinley* and *Zean*. *Edeh* and *Meyer* represent the trend in the District of Minnesota. JCC acknowledges the weight of these authorities, but it attempts to distinguish the facts in the

*Edeh* and *Meyer* cases from the facts here. (Def.'s Memo. at 16.) The distinction is difficult to follow.

The plaintiffs in *Edeh* and *Meyer*, like Plaintiff here, alleged actual damages in the form of worry, frustration, sleeplessness, and humiliation. There is no difference in labels that these three plaintiffs ascribed to their mental anguish. Their subjective experiences were not different in magnitude or effect.

Here, Plaintiff testified that before JCC's voice messages she had not discussed the family's debt problems with her children. (Zortman Depo. at 65:1–16.) After JCC communicated with her children in connection with the collection of a debt, the family's debt problems were out in the open. Plaintiff testified:

> I was embarrassed and ashamed that I had to have the discussions with my children and explain things to them and it kept me up, not for whole night or anything, but at times at night I would be up worrying about what they were thinking and hoping I could turn my oldest's decision – my oldest's child's mind around from thinking he didn't have to pay his bills.

(*Id.* at 58:5–13.) Further, while JCC has attempted to depict Plaintiff's ongoing anxiety about the example she has set for her children as solely a concern related to her oldest son, with whom JCC did not communicate, her testimony plainly represents that JCC's messages caused her to worry that all her children would think less of her. She testified that "now I feel like [my oldest son is] looking at me like I'm not the perfect mom that every mom would want to be in their kid's eyes. All three of them, actually." (*Id.* at 61:14–19.) In the end, Plaintiff viewed her children listening to JCC's voice messages as a painful ordeal, stating "I want whomever's responsible for doing wrong for my children

17

having to hear what they had to hear and for me to explain and go through what I've had to go through with them, for somebody to be responsible for that." (Id. at 42: 14–18.)

Under *Edeh* and *Meyer*, Plaintiff's testimony regarding her embarrassment, worry, and sleeplessness is sufficient to create a genuine issue of material fact as to whether she is entitled to actual damages under the FDCPA.

### C. JCC Rule 68 Offer Did Not Offer Full Compensation for Plaintiff's Claims.

Beyond the sufficiency of Plaintiff's evidence of her actual damages, JCC's motion should also be denied because its Rule 68 offer cut off Plaintiff's claim to attorney's fees as of the date of the offer. (*See* Williams Aff., Ex. F.) While there is nothing technically improper about cutting off a plaintiff's claim to attorney's fees as of the date of the offer, courts have consistently held that such offers do not provide a plaintiff full compensation. *See Andrews v. Professional Bureau of Collections,* 270 F.R.D. 205, 206–07 (M.D.Pa. 2010); *Valencia v. Affiliated Group, Inc.*, 674 F.Supp.2d 1300, 1306 (S.D.Fla. 2009). This conclusion follows from the purpose of Rule 68. The purpose of Rule 68 "is to encourage the settlement of litigation." *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352 (1981). If an offer declines to allow compensation for time spent deliberating an offer with counsel, the purpose to encourage settlement discussions is undermined. To effectuate the purpose of Rule 68, courts have held that offers that limit attorney's fees cannot moot a case because they did not provide full compensation. *See Valencia*, 674 F.Supp.2d at 1306. Accordingly, JCC's request for dismissal based on its prior Rule 68 offer should be denied.

## **CONCLUSION**

For all the reasons stated above, Plaintiff respectfully requests that JCC's motion for summary judgment be denied.

Dated this 22nd day of November, 2011.

Respectfully submitted,

By: s/ Thomas J. Lyons
CONSUMER JUSTICE CENTER, P.A.
Thomas J. Lyons, Esq.
Attorney I.D. #65699
367 Commerce Court
Vadnais Heights, Minnesota 55127
Telephone: (651) 770-9707

*Attorney for Plaintiff*