UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christina Zortman,

Plaintiff,

v.                                                    Civil No. 10-3086 (JNE/FLN)
                                                      ORDER
J.C. Christensen & Associates, Inc.,

Defendant.

---

Thomas J. Lyons, Esq., Lyons Law Firm, PA, appeared for Plaintiff Christina Zortman.

Christopher R. Morris, Esq., Bassford Remele, PA, appeared for Defendant J.C. Christensen & Associates, Inc.

---

In this case Defendant J.C. Christensen & Associates, Inc. (JCC), a debt collector, called the cellular telephone of Plaintiff Christina Zortman, a consumer, and left a message that identified itself as a debt collector. Zortman loaned her phone to her children and they heard the message. Zortman maintains that JCC's action violated the Fair Debt Collection Practices Act's (FDCPA) prohibition on communications with third parties. 15 U.S.C. § 1692c(b) (2006). The case is before the Court on JCC's motion for summary judgment. JCC argues that the case is moot. In the alternative, JCC argues that it did not violate the FDCPA because its message was required by the Act's mandate that debt collectors identify themselves; it maintains that a contrary interpretation would render voicemail unusable by debt collectors and that this result is at odds with the Act.

JCC's previous motion—for dismissal on the pleadings—was denied by this Court on April 29, 2011. In that motion, the question presented was whether, to state a claim, a plaintiff must allege that a debt collector intentionally made contact with a third party. The Court denied

that motion in part because the Complaint did not "plead a case where a message that contained only the disclosure requirements [mandated by statute] is what caused the alleged violation of § 1692c(b)." *Zortman v. J.C. Christensen & Assocs., Inc.*, 819 F. Supp. 2d 874, 878 (D. Minn. 2011). After denial of the Rule 12 motion, the parties proceeded with discovery, which is now closed. The facts, as now known after discovery, show that the debt collector's message in this case contained only the minimum disclosure requirements. Although only JCC has moved for summary judgment, the parties appear to agree that there are no factual disputes in this case.

Since the Court considered the Rule 12 motion, JCC made a Rule 68 offer of judgment that was rejected by Zortman. The offer was for $1,001 (one dollar more than the maximum statutory damages), plus costs and fees through the date of the offer.

The pertinent facts are as follows. Zortman, who is an employee of a debt collection agency, incurred a Kohl's Department Store debt in the amount of $648.39. Kohl's records listed a home and a work telephone number for Zortman. The work number was Zortman's cellular phone number. The debt went unpaid and was assigned to JCC for collection. In an attempt to contact Zortman, JCC called the telephone numbers supplied by Kohl's. No live person answered the telephone. Both numbers were connected to voicemail, the outgoing messages of which did not contain personal information but rather stated the phone number that had been reached. JCC left the following message: "We have an important message from J.C. Christensen & Associates. This is a call from a debt collector. Please call 866-319-8619." (Williams Aff. ¶ 2, Nov. 1, 2011, ECF No. 51).

It was Zortman's practice to lend her cellular phone to her children when they were out, and the children accessed the voicemail and heard the message. The children asked Zortman about the message, and in response to their inquiries, she revealed the fact that the family was

under financial stress. Around the same time, other debt collectors had been calling and Zortman was also concerned that her oldest child had been acquiring debts that he could not pay. Zortman experienced emotional distress and loss of sleep.

## I.    DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the parties do not dispute any facts in this case, the Court considers whether JCC is entitled to judgment as a matter of law.

## A.    Jurisdiction

Before turning to the merits of the FDCPA claim, the Court must address JCC's assertion that Zortman's rejection of its Rule 68 offer of judgment mooted this case, thereby depriving the Court of jurisdiction because no case or controversy remains between the parties. For the following reasons, the Court concludes that it does have jurisdiction to consider the case.

Rule 68 of the Federal Rules of Civil Procedure permits a defendant to offer that judgment be entered against it under specified terms that include the costs then accrued. Fed. R. Civ. P. 68(a). If a plaintiff rejects a Rule 68 offer, and the judgment the plaintiff ultimately obtains is less than the unaccepted offer, "the [plaintiff] must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). The purpose of Rule 68 is to encourage settlements. *Marek v. Chesny*, 473 U.S. 1, 10 (1985).

Federal jurisdiction is, of course, limited to cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). Absent an actual case or controversy, the Court lacks subject matter jurisdiction. *See* U.S. Const. Art. III, § 2; *see also Geraghty*, 445 U.S. at 395. Where the Court lacks subject matter jurisdiction, it must dismiss the case. *See* Fed. R. Civ.

P. 12(h)(3). The plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. *See Newhard, Cook & Co. v. Inspired Life Ctrs., Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990). The controversy ceases and a case becomes moot when a party no longer has a personal stake in the outcome of the litigation. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969).

Some courts have, as JCC observes, determined that a Rule 68 offer that would provide all the relief a plaintiff requests has the effect of mooting the action even if the offer is not accepted. *See, e.g.*, *Warren v. Sessoms & Rogers, P.A.*, Nos. 10-2105, 10-2155, 2012 WL 76053, *3 (4th Cir. Feb. 1, 2012); *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 575-76 (6th Cir. 2009); *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743-44 (7th Cir. 2007); *Goodmann v. People's Bank*, 209 F. App'x 111, 115 (3d Cir. 2006). The Eighth Circuit Court of Appeals has not decided whether a Rule 68 offer that includes all the relief sought moots an action.

JCC first argues that its offer of $1,001—$1.00 over the maximum allowable statutory damages of $1,000—represented all the damages sought by Zortman. It argues, including in a notice of subsequent authority submitted to the Court on March 29, 2012, that emotional distress damages are not recoverable as part of actual damages. Even if they are recoverable, JCC argues, the facts in Zortman's case render her ineligible for emotional distress damages. Zortman asserts that she is entitled to an unspecified amount in emotional distress damages. Zortman also argues that the Rule 68 offer failed to encompass all the relief sought for an entirely separate reason, namely that it did not include post-offer fees. For the reasons that follow, the Court agrees with Zortman and it will not reach the emotional distress argument.

JCC argues that the language of Rule 68 precludes recovery of attorney's fees accrued after an offer was extended. Zortman disagrees, asserting that reasonable attorney's fees incurred

in deciding whether to accept the offer are included under the rule. Rule 68 provides: "a party defending a claim may serve on an opposing party an offer to allow judgment on specified terms, *with the costs then accrued*." Fed. R. Civ. P. 68(a) (emphasis added). In *Marek v. Chesney*, the United States Supreme Court held that Rule 68 provides for "all costs properly awardable under the relevant substantive statute or other authority." *Marek*, 473 U.S. at 9. Thus, attorney's fees can be included in Rule 68 "costs" if the substantive statute defines costs to include attorney's fees. *Id.* Unlike the statute at issue in *Marek*, the FDCPA separates costs and attorney's fees. *Compare id.* at 9 ("[A] prevailing party in a § 1983 action may be awarded attorney's fees 'as part of the costs.'" (quoting 42 U.S.C. § 1988(b))), *with* 15 U.S.C. § 1692k(a)(3) (allowing recovery of "costs of the action, together with a reasonable attorney's fee as determined by the court"). Because the FDCPA separates costs and fees, the Rule 68 limitation on costs does not also apply to fees under the FDCPA. Thus, a plaintiff in a FDCPA case may recover attorney's fees accrued in deciding whether to accept a Rule 68 offer provided that they are reasonable. The district courts that have addressed similar arguments conclude that, under the FDCPA, a plaintiff is entitled to attorney's fees accumulated after a Rule 68 offer including those associated with preparing a fee petition and resulting litigation. *See, e.g.*, *Hernandez v. Asset Acceptance, LLC*, No. 11-cv-01729, 2012 WL 447545, at *4 (D. Colo. Feb. 13, 2012); *Andrews v. Prof'l Bureau of Collections of Md., Inc*., 270 F.R.D. 205, 207 (M.D. Pa. 2010); *Valencia v. Affiliated Grp., Inc*., 674 F. Supp. 2d 1300, 1304 (S.D. Fla. 2009).

Here, it is reasonable that Zortman would accrue some attorney's fees after the offer of judgment, including those associated with preparing a motion for attorney's fees. Although fees accumulated after JCC's offer of judgment are likely minimal, they nevertheless prevent the Rule 68 offer from encompassing *all* of the relief to which Zortman is entitled under the FDCPA.

The ability of a Rule 68 offer to moot a case in the Eighth Circuit is untested. But even if such an offer would moot an action, JCC's offer does not qualify: Zortman retains a legally cognizable interest in post-offer attorney's fees. The Court concludes that it has not been deprived of jurisdiction.

**B.     FDCPA**

In her Complaint, Zortman alleges that the voicemail messages left by JCC violated 15 U.S.C. § 1692c(b). Section 1692c(b) is one part of the FDCPA, an act passed by Congress in 1977 in order to "eliminate abusive debt collection practices" while also ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). Some of the practices that led to the passage of the Act were described in the contemporaneous Senate Report:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

S. Rep. No. 95-382, at 2 (1977). "[W]ith any question of statutory interpretation, the court begins its analysis with the plain language of the statute." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011). The FDCPA is silent on the availability of voicemail messages as a means for collecting a debt. When faced with ambiguity, the Court should consider the legislative history and other authorities to determine Congress's intent. *Id.* at 863. The Court's "objective in interpreting a federal statute is to give effect to the intent of Congress." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (quoting *United States v. Vig*, 167 F.3d 443, 447 (8th Cir. 1999)).

The FDCPA has not been significantly amended since its enactment in 1977.[1] Technology, however, has changed significantly since then. In particular, voicemail was not available in 1977. Consumers might have had answering machines, but those machines would not have been as widely used as voicemail is today. Caller identification was not as ubiquitous, nor was the availability of internet searches that yield nearly instantaneous reverse telephone directory information. A "clarifying" bill has been introduced by Representative Barney Frank, but its fate is uncertain as of this writing. *See* H.R. 4101, 112th Cong. (2012). That proposed bill contains language explicitly permitting debt collectors to leave voicemail messages for consumers. *Id.*

Like Congress, the Federal Trade Commission (FTC)—the agency responsible for enforcing the FDCPA—does not discuss the use of voicemail in its commentary on the Act. But in its discussion of "[c]ommunication with third parties," the FTC does address contact with telephone operators or telegraph clerks and allows contact "if the only information given is that necessary to enable the collector to transmit the message to, or make the contact with, the consumer." 53 Fed. Reg. 50097-02, § 805(b)(3) (1988). Not only does this specific reference to telephone operators and telegraph clerks signal the level of technology prevalent at the time of enactment, but importantly, it also indicates that the FTC recognized the need to effectively transmit messages from debt collectors to consumers. Moreover, it acknowledges and accepts the possibility of communicating with certain third parties to effectuate such message transmission.

---

[1]     The Dodd-Frank Wall Street Reform and Consumer Protection Act amended the FDCPA; a regulation regarding state exemptions followed. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1089, 124 Stat. 1376, 2092-93 (2010); 12 C.F.R. § 1006 et seq. But the Court is not aware of anything in that act that affects the analysis here.

Debt collectors, consumers, and courts—especially federal district courts—have struggled to interpret the FDCPA in light of practical concerns and technological developments and to harmonize the various components of the Act. The litigation focus *du jour* is on the interplay between the Act's requirement that debt collectors meaningfully identify themselves and the Act's prohibition against communicating with third parties as those strictures relate to telephone and voicemail contacts.

For many years, debt collectors refrained from identifying themselves on voicemail messages. This was, as counsel for JCC explains it and as is evident from litigation around the country, out of concern for running afoul of § 1692c(b). That section prohibits a debt collector (with limited exceptions) from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer." 15 U.S.C. § 1692c(b). After all, once a message is left, the person who left the message has no control over who might listen to the message. Messages that contained information about a named consumer's debt could be heard by individuals other than the intended consumer. The practice began to change, however, when courts started imposing liability on debt collectors for failing to comply with sections 1692d(6) and 1692e(11). Section 1692d(6) prohibits "the placement of telephone calls without meaningful disclosure of a caller's identity." 15 U.S.C. § 1692d(6). Likewise, § 1692e(11) states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "failure to disclose in subsequent communications [with a consumer] that the communication is from a debt collector." 15 U.S.C. § 1692e(11).

Beginning with a decision from the Central District of California in 2005 and gaining broad support following a Southern District of New York case in 2006, nearly every court to

have faced the question has determined that answering machine or voicemail messages are "communications" and that §§ 1692d(6) and 1692e(11) require debt collectors to identify themselves. *See Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006); *see also Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 949–50 (D. Minn. 2008) (collecting cases). Debt collectors defended their practices, in what is referred to as the *Foti* line of cases, by asserting that identification would take them out of the frying pan of the §§ 1692d(6) and 1692e(11) disclosure requirements but put them into the fire of the § 1692c(b) prohibition against communications with third parties. The debt collectors' argument was almost universally rejected. *See, e.g.*, *Mark v. J.C. Christensen & Assocs., Inc.*, No. 09-100, 2009 WL 2407700, at *5 (D. Minn. Aug. 4, 2009); *Baker*, 554 F. Supp. 2d at 950; *Leyse v. Corporate Collection Servs., Inc.*, No. 03 Civ. 8491, 2006 WL 2708451, at *4 (S.D.N.Y. Sept. 18, 2006).

In the course of interpreting and applying §§ 1692d(6) and 1692e(11) and addressing debt collectors' rock-and-a-hard-place arguments (sometimes described as Scylla and Charybdis, Morton's Fork, Hobson's Choice, or Catch 22), courts sometimes made observations about §1692c(b) in the form of dictum. Courts often noted that a message left on the voicemail of a consumer's personal phone carried minimal risk of third-party exposure. *See, e.g.*, *Hicks v. America's Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 514 (N.D. Ohio 2011) ("the small risk of exposure cannot relieve the debt collector of its obligation to identify itself"); *Joseph v. J.J. Mac Intyre Cos., LLC*, 281 F. Supp. 2d 1156, 1164 (N.D. Cal. 2003). *But see Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1345 (S.D. Fla. 2008) ("Leaving a message at the debtor's home, where another third person may retrieve or overhear it, is a substantial risk of communication to third parties that § 1692c(b) [sic] the FDCPA was intended to prevent.").

Some courts observed, again in dictum, that § 1692c(b) only applied to purposeful third-party communications. *See Mark*, 2009 WL 2407700, at *5 ("The FDCPA was intended to protect against deliberate disclosures to third parties as a method of embarrassing the consumer, not to protect against the risk of an inadvertent disclosure that could occur if another person unintentionally overheard the messages left on [Plaintiff's] answering machine." (citation omitted)). Indeed, it was on the strength of the *Mark* dictum that JCC initially moved for dismissal on the pleadings. Other courts observed that if debt collectors cannot comply with all sections of the FDCPA, they simply cannot leave voicemail messages. *See, e.g.*, *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009) ("[I]f [the debt collector's] assumption is correct, the answer is that the [FDCPA] does not guarantee a debt collector the right to leave answering machine messages."); *Sclafani v. BC Servs., Inc.*, No. 10-61360-CIV, 2010 WL 4116471, at *3 (S.D. Fla. Oct. 18, 2010) ("If [the defendant] could not leave voice messages that simultaneously complied with the multiple applicable provisions of FDCPA, it should not have left the offending voice messages."); *Baker*, 554 F. Supp. 2d at 950 (finding that the defendant's argument that by properly disclosing its identity it might violate § 1692c(b) has been "repeatedly rejected in the context of debt collector messages left on a consumer's home voicemail" and collecting cases). Thus, the statutory language of §§ 1692d(6) and 1692e(11), as interpreted by courts to date, requires debt collectors to meaningfully identify themselves and state that they are calling to collect a debt (sometimes referred to as the "mini Miranda") in communications with a consumer, and § 1692c(b) does nothing to eliminate that requirement.

Not surprisingly, when debt collectors began leaving messages that contained meaningful disclosure of their identity and purpose, consumers began filing suits alleging § 1692c(b) violations. The courts that have faced debt collectors' rock-and-a-hard-place pleas in the context

of interpreting § 1692c(b) have rejected it there as well. *See, e.g.*, *Leahey v. Franklin Collection Serv., Inc.*, 756 F. Supp. 2d 1322, 1324 (N.D. Ala. 2010) (relying on case law that notes debt collectors do not have a right to leave messages); *Berg*, 586 F. Supp. 2d at 1339 (following the reasoning in *Foti* and finding debt collectors are not entitled to leave messages).

To date, courts have been faced almost exclusively with voicemail messages that did more than merely identify the caller as a debt collector—the messages also identified the intended recipient of the message, revealed that the intended recipient owes a debt, or both. These messages have typically been held to be violative of § 1692c(b). *See Branco v. Credit Collection Servs. Inc.*, No. S-10-1242, 2011 WL 3684503, at *1 (E.D. Cal. Aug. 23, 2011) (finding a § 1692c(b) violation where message names the plaintiff and states "[t]his is an attempt to collect a debt"); *Valentine v. Brock & Scott, PLLC*, No. 09-CV-2555, 2010 WL 1727681, at *5 (D.S.C. Apr. 26, 2010) (denying motion to dismiss where messages stated that the call was to collect a debt from the plaintiff); *Leahey*, 756 F. Supp. 2d at 1324 (including the phrase "[t]his is an attempt to collect a debt" in the message); *Berg*, 586 F. Supp. 2d at 1339 (same). *But see Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1174 (D. Minn. 2011) (finding a violation of § 1692c(b) where the only information provided in the decision about the message was that the caller identified himself as a debt collector).[2]

For obvious reasons, and as acknowledged by both parties, a mini-Miranda message would disclose a consumer's debt if given to a third party. At the time it left its messages, JCC

---

[2]     Zortman relies heavily on *Cordes* where the court found a violation of § 1692c(b) due to messages left on the plaintiff's voicemail that were overheard by the plaintiff's roommates. *Cordes*, 789 F. Supp. 2d at 1174. The text of the voicemails in *Cordes* are not included in the written order, and the court appears to rely only on the fact that the defendant identified itself as a debt collector. But the court specifically points out that the only argument made by the defendant was that § 1692c(b) contains an intent requirement. Because the court found no such intent requirement in the statute and the defendant raised no other arguments, the plaintiff was entitled to summary judgment. *Id.* at 1177. *Cordes* was decided on narrow grounds.

could not have known for certain who would ultimately listen to them. Here, the messages left by JCC identify it as a debt collector. Each message stated in its entirety: "We have an important message from J.C. Christensen & Associates. This is a call from a debt collector. Please call 866-319-8619." (Williams Aff. ¶ 2, Nov. 1, 2011, ECF No. 51).

JCC asserts that it should not be held liable for violating § 1692c(b) because it said only "what the *Mark* Court required." (Def.'s Mem. Supp. Mot. Summ. J. 9, ECF 50). But *Mark* and other cases that imposed § 1692d(6) or § 1692e(11) liability did not direct debt collectors to proceed in any particular way in leaving voicemail messages; the holdings of those cases are limited to §§ 1692d(6) and 1692e(11). *See Mark*, 2009 WL 2407700, at *4. Observations about § 1692c(b) in those cases is dictum. Plus, courts have opined *ad nauseam* that the FDCPA might not permit the use of voicemail at all. *See, e.g.*, *Edwards*, 584 F.3d at 1354; *Sclafani*, 2010 WL 4116471, at *3; *Mark*, 2009 WL 2407700, at *5; *Baker*, 554 F. Supp. 2d at 950. To the degree that JCC maintains that it is sheltered from liability on account of complying with court directives, this Court is not persuaded.

The Court turns now to the question of whether JCC's messages actually constituted third-party communications in violation of § 1692c(b). One aim of the FDCPA is to protect consumers' privacy; one noxious practice that it sought to address was, as described in the Senate Report, "disclosing a consumer's personal affairs to friends, neighbors, or an employer." S. Rep. No. 95-382, at 2 (1977). To that end, the Act places limitations on certain kinds of contacts and attempted contacts with debtors. Postcards, for example, are off limits, as are mailing envelopes that indicate on the exterior that they are from a debt collector or relate to the collection of a debt. 15 U.S.C. §§ 1692b(4), 1692b(5), 1692f(7), 1692f(8). But deliberate communication with third parties is not completely forbidden. Apart from situations in which a

debtor consents to the communication, a debt collector may seek location information about a debtor from a third party and may, if asked, reveal the collection agency's name. *Id.* § 1692b(1). Additionally, as previously noted, the FTC considered debt collectors leaving messages with telephone operators permissible under the Act. 53 Fed. Reg. 50097-02, § 805(b)(3) (1988).

But what about third-party communication that is not deliberate? The FDCPA is a strict liability statute and is liberally construed to protect consumers. *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001).[3] Recognizing the "difficult, though perhaps not impossible" challenge of complying simultaneously with all sections of the FDCPA, debt collectors have employed various techniques in their attempts to contact consumers via telephone. *Berg*, 586 F. Supp. 2d at 1344.

Some district courts have confronted a creative method employed by some debt collectors to try to solve the dilemma. Callers left messages that identified the person they were trying to contact, then said "[i]f you are not the person requested, disconnect this recording now." *Id.* at 1339. After a delay of some seconds, a substantive message was left about the debt sought to be collected. Of course, a debt collector leaving such a message would have no assurance—and perhaps not even a reasonable expectation—that a curious spouse, roommate, family member or

---

[3]     The debt collector's intent is only relevant under the statute in the context of the bona fide error defense in § 1692k(c). "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The Court does not consider that defense to be apt here, where Zortman's outgoing message stated only the telephone number reached and thus the hearing of messages by persons other than the consumer can be anticipated. *See id.*

The Eleventh Circuit Court of Appeals, addressing a related issue, considered whether a debt collector is entitled to the defense "when it intentionally violates one provision of the Act [§ 1692e(11)] in order to avoid the risk of violating another provision [§ 1692c(b)]." *Edwards*, 584 F.3d at 1352. Finding an intentional violation of § 1692e(11) constituted a violation of good faith, the court held that the bona fide error defense did not apply. *Id.* at 1353-54.

other person would obey the command of the unidentified voice. And, in fact, no court has given

the go-ahead to that approach. *See id.* at 1343; *see also Branco*, 2011 WL 3684503, at *1;

*Leahey*, 756 F. Supp. 2d at 1324.

At the other end of the information-conveying spectrum, other debt collectors have

simply hung up without leaving any message at all. In today's world of telecommunications,

even that act often leaves information in the form of a caller identification record. Suits have

been brought against debt collectors who blocked their number or made a misleading name

appear in a caller ID window. The propriety of blocking or otherwise preventing disclosure of

caller identity is unsettled. *See Jiminez v. Accounts Receivable Mgmt., Inc*., No. CV 09-9070,

2010 WL 5829206, at *6 (C.D. Cal. Nov. 15, 2010) ("[I]t is not impossible to imagine some

scenario in which a debt collector's hanging up without leaving any identifying information

might entail a violation of the statute [referring to the identification requirement] (for example, if

the debt collector used some form of caller identification blocking device)."); *but see*, *Glover v.

Client Servs., Inc*., No. 07-cv-81, 2007 WL 2902209, at *3–4 (W.D. Mich. Oct. 2, 2007)

(holding that it is not a deceptive practice under the FDCPA for a debt collector to have

"unavailable" appear in a caller ID window instead of its telephone number).

In a case arising in this district, liability was found where phone calls were not answered

and no message was left. *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943 (D. Minn. 2007).

There, the debt collector allowed false identification information to appear on caller ID, and this

was sufficient to violate § 1692d(6). *Id.* at 946-47. A debt collector operating in Minnesota

thereafter would know that false information would not be permitted. But the collector would not

know if a mere blocked number would also violate § 1692d(6). The clear implication of the

*Knoll* decision is that a debt collector should allow at least its true phone number—if not its

name—to appear on caller ID. It does not appear that any court has found a § 1692c(b) (i.e.,

third-party disclosure) violation stemming from a debt collector not taking steps to conceal its

identity or number on caller ID. *See, e.g.*, *Elliott v. GC Servs., LP*, No. 8:10-cv-1976-T-24-TBM,

2011 WL 5975671, at *3 (M.D. Fla. Nov. 28, 2011) (finding no FDCPA violation when a debt

collector allows its accurate phone number to appear on a consumer's caller ID); *Carman v. CBE*

*Grp., Inc.*, 782 F. Supp. 2d 1223, 1233-34 (D. Kan. 2011) (same).

 The Court observes, although neither party pointed it out, that JCC's telephone number is

readily identifiable through a reverse telephone directory or internet sources as belonging to J.C.

Christensen & Associates, a debt collector. Thus, even if Zortman had no voice messaging

system, the mere existence of a "missed call" on her cellular phone call log would reveal

essentially the same information—the identity of JCC and its phone number.

 In view of the technical reality that—short of requiring debt collector's to block their

numbers—it is virtually impossible to use a telephone without revealing directly or indirectly

that a debt collector is calling, the Court is of the opinion that the message left in this case is

most productively analyzed in terms of whether the message left on voicemail was a

"communication" for purposes of § 1692c(b). The Act defines "communication" as "the

conveying of information regarding a debt directly or indirectly to any person through any

medium." 15 U.S.C. § 1692a(2). Courts have taken an extremely broad view of indirect

communication. *See Belin v. Litton Loan Servicing, LP*, No. 8:06-cv-760-T-24, 2006 WL

1992410, at *4 (M.D. Fla. July 14, 2006) (finding a message whose purpose was to induce the

consumer to return the call indirectly conveyed information about a debt); *West v. Nationwide*

*Credit, Inc.*, 998 F. Supp. 642, 644-45 (W.D.N.C. 1998) (holding that leaving a live message

with a third party indicating the call related to a "very important" matter but not mentioning a

debt or that the caller was a debt collector was a communication in violation of § 1692c(b)); *see also Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290, 1296-97 (E.D. Mo. 2008) (finding that because the debt collector left a telephone number for the consumer to return its call, the call was in connection with the collection of a debt in violation of § 1692c(b)).

In their briefs, the parties focused on the jurisdictional issues in the case and on the scienter requirement, if any, that is implicit in § 1692c(b). (In its Rule 12 Order, the Court rejected JCC's proffered position that liability depended on intentional conduct.) The Court, therefore, requested supplemental briefing on whether the voicemails left by JCC were communications.

In its supplemental brief, Zortman augmented the argument she initially presented in her memorandum in opposition to summary judgment. Zortman proposed that identifying oneself as a debt collector to a third party alone is a communication, and even it if is not, the message left by JCC stated that it was "important" thereby conveying "information regarding a debt." For her first proposition, Zortman compares this situation to other sections of the FDCPA where mere identification as a debt collector is prohibited. Zortman refers the Court to § 1692b(5), which prohibits the use of "any language or symbol" that "indicates that the debt collector is in the debt collection business" when communicating by mail with third parties to acquire location information about a consumer. 15 U.S.C. § 1692b(5). Zortman also likens the situation to that contemplated in § 1692f(8), which prohibits a debt collector from using language on an envelope that would "indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8). Citing *Foti*, Zortman argues that because JCC's message indicated it was "important" that constitutes communicating information regarding a debt. *Foti*, 424 F. Supp. 2d at 656 (noting that the

16

message stated it that the "matter required immediate attention" in concluding that the voicemail was a communication).

JCC, for its part in the supplemental briefing, argued that its messages did not violate § 1692c(b) because they did not disclose that a particular consumer actually owed a debt. JCC points the Court to several cases, though not precisely on point, that indicate that a mere statement identifying a caller as a debt collector may not be sufficient to convey information regarding a debt. *See Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011) (holding that a fax requesting employment information and verification did not convey information regarding a debt, but also noting that the sender's name and logo did not make explicit that the request was from a debt collector); *Zamos II v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 782 (N.D. Ohio 2006) (implying that a call that merely identified the caller as a debt collector was insufficient to violate the FDCPA); *Committe v. Dennis Reimer Co., L.P.A.*, 150 F.R.D. 495, 499-500 (D. Vt. 1993) (finding that a message left with a third party stating that the plaintiff's wife was being foreclosed on, where the plaintiff had never been married, did not constitute a communication regarding a debt owed by the plaintiff).

The Court does not find the authority cited by either party particularly compelling. Zortman's comparisons to mail are unavailing because the consumer's name appears on the face of the envelope whereas JCC's messages do not name Zortman. Further, the likelihood of a third party viewing an envelope sent through the mail is much greater than overhearing a voicemail. *See Joseph*, 281 F. Supp. 2d at 1164. Although the *Foti* court noted the "immediate attention" language in the message at issue there, the decision did not turn on that language but instead focused on the message as a whole being an enticement for a return call. *See Foti*, 424 F. Supp.

2d at 656. The cases cited by JCC are similarly unhelpful, as identification of oneself as a debt collector is not central or even given more than passing mention in those cases.

Here, in order to fit within the "conveying of information regarding a debt" language of § 1692a(2), a third-party listener would need to make two key inferences. JCC's messages were not directed to Zortman by name. Thus, anyone who listened to the messages would not be told that Christine Zortman was being contacted in connection with a debt she owed. A person who heard the message would have to make the assumption that because it was Zortman's telephone that she was the intended recipient. But the number might have been dialed in error. The debt collector might have wrong or outdated information about the owner of the number it dialed. In a world where wrong numbers are a fact of life, the unintended third-party listener would understand that one possible explanation for the message he or she overheard might be a wrong number. Nothing in JCC's message removed that possibility. The unintended listener would then have to make a second assumption—that the only reason a debt collector calls is to collect a debt. Even if that is a common reason for calls, debt collectors also place calls to obtain location information. *See* 15 U.S.C. § 1692b. In this case, Zortman worked for a debt collector. It would not be unreasonable that a call from a debt collector related to her employment. Inferences or assumptions by an unintended listener are not "indirect communications." JCC's message is in contrast to the messages found to be violations in other cases that said the consumer's name and identified a debt. *See Branco*, 2011 WL 3684503, at *1; *Valentine*, 2010 WL 1727681, at *5; *Leahey*, 756 F. Supp. 2d at 1324-25; *Berg*, 586 F. Supp. 2d at 1339. *But see Cordes*, 789 F. Supp. 2d at 1174.

The inclusion in its voicemail message of the word "important" does not convert JCC's simple self-identification and telephone number into an indirect conveyance of information about

a debt. An "important message" could be any sort of solicitation. Even an unsophisticated consumer would understand that no call is placed unless the caller wishes to transmit a message, and the adjective "important" conveys no substantive information about that message. *See Peters v. Gen. Serv. Bureau, Inc*., 277 F.3d 1051, 1055 (8th Cir. 2002) (applying an objective "unsophisticated consumer test" when determining whether a debt collector's practices are deceptive or misleading in violation of the FDCPA). The Court concludes that the messages left by JCC on Zortman's voicemail do not constitute "communications" with a person other than the consumer.[4]

The FDCPA recognizes that debt collection is a legitimate commercial activity. *See* 15 U.S.C. § 1692(e); *Strand v. Diversified Collection Serv., Inc*., 380 F.3d 316, 318-19 (8th Cir. 2004) (recognizing that part of the purpose of the Act is to prevent competitively disadvantaging debt collectors who do not engage in abusive practices). The Act further recognizes that debt collectors may use the telephone. *See* 15 U.S.C. § 1692d(5). The Supreme Court has stated that a "'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *United States v. Campos– Serrano*, 404 U.S. 293, 301 n. 14 (1971) (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879)). Although the Act makes no specific mention of voicemail or answering machines—as previously noted, a bill has been introduced in the House of Representatives to make clear that voicemail is not prohibited—it would be unreasonable to read the Act to so constrict commercial speech that a voicemail message that essentially reveals no more than a hang-up call triggers

---

[4]     The Court notes that although it does not find JCC's message to be a communication under the Act that does not eliminate JCC's obligation to disclose its identity. Section 1692d prohibits harassing, oppressive or abusive "conduct," rather than "communications," and thus the prohibition on "the placement of telephone calls without meaningful disclosure of the caller's identity" still applies. 15 U.S.C. § 1692d(6); *see also Leyse*, 2006 WL 2708451, at *4 (noting the difference between "conduct" under § 1692d(6) and "communications").

19

liability for communicating with a third party. Where courts have found messages to be communications under the FDCPA, those messages conveyed more information than would be available from a hang-up or missed call. *See, e.g.*, *Branco*, 2011 WL 3684503, at *1; *Leahey*, 756 F. Supp. 2d at 1324-25; *Berg*, 586 F. Supp. 2d at 1339. *But see Cordes*, 789 F. Supp. 2d at 1174. In *Koby v. ARS National Services, Inc.*, the court considered three messages and distinguished those that provided account numbers and referenced documents from the one that merely provided the caller's name and callback number. No. 09cv0780, 2010 WL 1438763, at *3 (S.D. Cal. Mar. 29, 2010). The former were deemed to be communications, whereas the latter was not. *Id.* at *4; *see also Biggs v. Credit Collections, Inc.*, No. CIV-07-0053-F, 2007 WL 4034997, at *4 (W.D. Okla. Nov. 15, 2007) (finding messages did not convey information regarding a debt where they merely stated the caller's name and callback number).

Some courts have found that "communication" requires that a message be received. *See, e.g.*, *Worsham v. Acct. Receivables Mgmt., Inc.*, No. JKB-10-3051, 2011 WL 5873107, at *3 (D. Md. Nov. 22, 2011) ("[U]nanswered telephone calls[] can hardly be considered 'communications' under the FDCPA."); *Wilfong v. Persolve, LLC*, No. 10-3083, 2011 WL 2678925, at *4 (D. Or. June 2, 2011) ("No information regarding a debt was conveyed directly or indirectly to plaintiff by the receipt of the unanswered telephone call."); *Seaworth v. Messerli*, Nos. 09-3437, 09-3438, 09-3440, 09-3441, 2010 WL 3613821, at *5 n.6 (D. Minn. Sept. 7, 2010) (finding a letter that is mailed but never received is not a "communication" under the FDCPA); *see also Hicks v. America's Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 513 (N.D. Ohio 2011) (finding that hanging up, and choosing not to leave a voice message is not a deceptive practice under the FDCPA). As one court has recognized, communicating is an intransitive verb defined in the Merriam-Webster Dictionary as "to transmit information,

thought, or feeling so that it is *satisfactorily received or understood*." *Cozmyk v. Prompt Recovery Servs., Inc.*, No. 2:11-cv-00375, 2012 WL 1065456, at *3 (S.D. W. Va. Mar. 30, 2012) (emphasis added). A hang-up call is not a communication. A message that conveys no more information than a hang-up call shall not be construed a third-party communication.

Moreover, there are several practical reasons why it makes little sense to interpret the Act to include mere identification as a debt collector as a violation of a consumer's privacy. One reason, as already suggested, is that such an interpretation would effectively remove the telephone as a means of communication and the Act explicitly allows telephone calls from debt collectors. *See* 15 U.S.C. § 1692d(5). Zortman's arguments diminish the significance of eliminating the telephone as a viable debt collection method. Zortman argues, as other courts have suggested, that debt collectors have non-telephonic means to communicate with consumers. *See, e.g.*, *Berg*, 586 F. Supp. 2d at 1344 (suggesting alternative means of communications to include postal mail and in-person contact); *Foti*, 424 F. Supp. 2d at 659 (noting that debt collectors could use other means including sending letters). It seems that debt collectors could also, as Zortman here observed, proceed directly to filing a lawsuit. But the FDCPA explicitly permits telephone calls from debt collectors. *See* 15 U.S.C. § 1692d(5). No mention is made in the Act of voicemail, but for the reasons discussed above, it is essentially impossible to use a telephone without conveying the same information as the JCC voicemails conveyed. Drawing a distinction that would allow a call but outlaw the corresponding voicemail would not be a fair reading of the Act and would not advance consumer interests.

When someone calls a consumer, the consumer has an interest in knowing who is intruding on his or her time. This is a socially accepted interest. *See* Peggy Post et al., *Emily Post's Etiquette*, 224, 226 (18th ed. 2011) ("When the call is answered, state your name. It's

polite, even when you're talking with a family member or close friend who knows your voice."). It is also, in some contexts, a legally protected interest. *See* Telephone Consumer Protection Act, 47 U.S.C. § 227 (2006); 47 C.F.R. §§ 64.1200(b)(1), 64.1200(d)(4). Prohibiting the type of voicemail message that was employed in this case, and thereby forcing hang-up or anonymous calls, would not further Congress's interest in minimizing consumer harassment or embarrassment. Consumers might reasonably consider incessant anonymous calls to be harassing in and of themselves. *See* 15 U.S.C. § 1692d(5) (prohibiting causing a telephone to ring continuously with the intent to annoy).

A remarkable volume of telephone calls is permissible under FDCPA jurisprudence. *See VanHorn v. Genpact Servs., LLC*, No. 09-1047-CV-S-GAF, 2011 WL 4565477, at *1 (W.D. Mo. Feb. 14, 2011) (finding 114 calls in a four-month period did not violate the FDCPA); *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (granting summary judgment in favor of a defendant who placed 149 telephone calls to the plaintiff during a two-month period); *Clingaman v. Certegy Payment Recovery Servs.*, No. H-10-2483, 2011 WL 2078629, at *5 (S.D. Tex. May 26, 2011) (granting summary judgment for a defendant who placed 55 phone calls over three and one-half months). If a person knows that he or she is being called by a debt collector, the FDCPA provides an avenue for relief from the harassment—sending a letter telling the collector to stop calling or informing the collector in writing that the consumer refuses to pay the debt. 15 U.S.C. § 1692c(c). That option, even the possibility of that option, is not available to a person who doesn't know that the persistent anonymous caller is a debt collector. In contrast, calls from a solicitor might be stopped by verbally telling the telemarketer to stop calling or putting one's number on a do-not-call list. *See* Telephone Consumer Protection Act, 47 U.S.C. § 227 (2006); 47 C.F.R. §§ 64.1200(c)(2), (d). But a consumer must have the opportunity to

differentiate between calls to effectively invoke his or her rights under the applicable statute.[5]

Further, if a debt collector can hardly use the telephone at all—and requiring hang-up calls or

blocked identification is tantamount to that—it is stymied from learning whether the consumer it

seeks wants to communicate with it.

Finding that the sort of identifying message left by JCC here is not a third-party

"communication" is in harmony with the stated purposes of the Act. The legislative intent of the

FDCPA "calls for a broad construction of [the FDCPA's] terms in favor of the consumer." *See*

*Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1042 (N.D. Ill. 2008). For the reasons

stated, interpreting § 1692c(b) to prohibit voicemail messages that merely identify the caller as a

debt collector and leave a return phone number does not favor the consumer. The FDCPA should

not be interpreted "to create bizarre results likely beyond the scope of Congress's intent in

enacting the statute." *Strand v. Diversified Collection Service*, 380 F.3d 316, 318 (8th Cir. 2004).

Prohibiting voicemail messages, like those left by JCC that provide no more information than

would be available through caller ID, does not directly advance the interests Congress set out to

protect in the FDCPA.

The messages at issue here did not identify a consumer. They did not identify a debt.

They conveyed no more information than would have been obvious in caller ID or could have

been acquired in a simple internet search for the caller's phone number. Under these

circumstances, and for the reasons stated, JCC is entitled to summary judgment.

---

[5]     Even Zortman admits that she has on occasion returned a debt collector's call when she
wanted to offer a settlement or make a payment. (Zortman Dep. 27:18-28:4, Aug. 1, 2011). Such
negotiations would be less likely if the debt collector had not first left a voicemail message
identifying itself.

## II.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.   Defendant's Motion for Summary Judgment [Docket No. 48] is GRANTED.

2.   Plaintiff's Complaint [Docket No. 1] is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 2, 2012

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge